UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

QUENSHAWN LITTLEJOHN,

     Plaintiff,

v.

RAPHAEL WASHINGTON, et al.,

     Defendants.

Case No. 24-10178

Honorable Robert J. White

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

Plaintiff Quenshawn Littlejohn sued Defendants—various persons associated with the Wayne County Jail—for violations of his constitutional rights under the First, Fifth, Eighth, Ninth, and Fourteenth Amendments that allegedly occurred during his stay at the Wayne County Jail. (ECF No. 154, PageID.894). The case underwent significant litigation before being reassigned to the undersigned. (*See* ECF No. 166, PageID.962-66 (summarizing much of the procedural history so far)). Claims endure related to three topics: (1) unsafe building conditions—specifically, a lack of fresh air; (2) lack of "in-person" visitation; and (3) lack of recreation or

1

exercise outside of Littlejohn's cell.[1] (ECF No. 166, PageID.976; ECF No. 169, PageID.997, 1001). Defendants[2] now move to dismiss under Fed. R. Civ. P. 12(b)(1) and (6) and for summary judgment under Rule 56. (ECF No. 170). The Parties fully briefed the motion and the Court will decide it without oral argument pursuant to Local Rule 7.1(f)(2). For the following reasons, the Court grants in part and denies in part the motion.

## I.   Background[3]

Littlejohn was a prisoner in the Wayne County Jail throughout the COVID-19 pandemic, from September 2020 until August 2023. As a result of the pandemic, the jail suspended in-person visitation. The jail did not resume in-person visitation while Littlejohn was there, although it relaxed other COVID-19 policies. The jail also suspended recreation opportunities for detainees. Over his almost three years at the jail, Littlejohn had little to no opportunities to recreate or exercise outside of

---

[1] Littlejohn filed a proposed amended complaint and sought to include three further claims: (1) a revived speedy trial claim, (2) a claim for interference in violation of the First Amendment, and (3) a claim for deprivation of access to a law library. (*See* ECF No. 166, PageID.966). The Court accepted the amended complaint as operative but denied leave to amend regarding the addition of those three claims. (*See generally* ECF No. 169).

[2] The defendants subject to Littlejohn's remaining claims are only Raphael Washington, the Wayne County Sheriff, Robert Dunlap, the County's Chief of Jails, and Wayne County Jail Commander Fredryn Allen.

[3] On some of the claims at issue, the Court relies only on the complaint. On one claim, the Court relies on a summary judgment record. A brief overview of facts is recounted here, and the relevant facts gleaned using the appropriate legal standards follow in the discussion.

his cell.  The jail also struggled with air circulation and temperature regulation. Littlejohn experienced congestion, allergies, and other respiratory symptoms. Littlejohn submitted several grievances related to his concerns.

## II.    Analysis

As a preliminary matter, the Court construes Defendants' brief as requesting summary judgment on the unsafe-building-conditions claim(s), dismissal or summary judgment in the alternative on the visitation claim(s), and dismissal or summary judgment in the alternative on the recreation claim(s).  Particularly considering the unsafe-building-conditions claims, Defendants rely heavily on materials outside the pleadings to support their argument and thereby converted the motion to one for summary judgment. (*See, e.g.*, ECF No. 170, PageID.1012). *See also* Fed. R. Civ. P. 12(d).  And to the extent Defendants rely on outside evidence with respect to the other two types of claims, the Court construes Defendants' arguments as including a request for summary judgment. *See* Fed. R. Civ. P. 12(d).

As a result, Defendants' motion is, in part, a pre-discovery motion for summary judgment. And summary judgment is generally improper before the plaintiff has a chance at discovery. *Amerisure Mut. Ins. Co. v. Transatlantic Reinsurance Co.*, No. 18-11966, 2021 WL 4340521, at *1 (E.D. Mich. Mar. 18, 2021); *see also Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) ("[A] motion for summary judgment may not be granted

until a plaintiff has had an opportunity for discovery."). But this rule does not require full discovery for every claim. Rather, "[b]efore ruling on summary judgment motions, a district judge must afford the parties adequate time for discovery, in light of the circumstances of the case." *Plott v. Gen. Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1195 (6th Cir. 1995).

## A.     Unsafe Building Conditions

First, Defendants argue that Littlejohn did not successfully exhaust any claim relating to unsafe building conditions as required by the Prison Litigation Reform Act (PLRA). (ECF No. 170, PageID.1010). Contrary to the general principle above, summary judgment on the issue of exhaustion is not premature here. Plaintiff does not develop an argument that he was prevented from grieving any issues or otherwise exhausting his administrative remedies, the record belies any such argument, and the exhaustion issue may be conclusively decided as a matter of law from the grievance record provided by Defendants. Summary judgment is therefore not premature. *Cf. Sango v. Miniard*, No. 16-1395, 2017 WL 11768649, at *3 (6th Cir. Jan. 4, 2017) (unpublished; affirming summary judgment without further discovery when discovery was unnecessary); *Parra v. Wright*, No. 11-6270, 2013 WL 6669235, at *7 (W.D.N.Y. Dec. 18, 2013) ("[T]he facts regarding Plaintiff's efforts at exhaustion are not disputed, and it does not appear that any amount of discovery would change the outcome of that portion of the application."). As explained further in the

4

following analysis, no amount of discovery can overcome Defendants' exhaustion defense under this issue. The Court therefore applies the summary judgment standards from Rule 56 and its attendant caselaw to the unsafe-building-conditions claims.

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When it considers a summary judgment motion, the Court must view the facts and draw all reasonable inferences

"in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

Under the PLRA, inmates must exhaust their administrative remedies before bringing a claim under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1997e(a). Because exhaustion is an affirmative defense, PLRA defendants bear "the burden of proving that [an inmate] has not exhausted his administrative remedies." *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012). "The PLRA does not provide a uniform federal exhaustion standard; rather, the inmate's correctional institution defines the applicable procedural rules that the inmate must follow to exhaust his administrative remedies." *Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022) (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)). So, to properly exhaust, "an inmate must take advantage of each step the prison holds out for resolving the claim internally and by following the critical procedural rules of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance on the merits in the first instance." *Id.* (quotation marks and citation omitted).

The Wayne County Jail maintains its own grievance procedure. If prisoners are concerned about issues including "violation of civil rights" and "unsafe or unsatisfactory conditions of confinement," they must submit a grievance within ten days of the complained-of condition or incident. If a prisoner is unsatisfied with the response to a grievance, he or she may file an appeal within ten days of receiving

6

the response. (ECF No. 170-5, PageID.1055).  A failure to appeal an unsatisfactory response constitutes failure to exhaust. *Pegross v. Wayne Cnty. Jail*, No. 07-12839, 2009 WL 2567864, at \*2, \*11 (E.D. Mich. Aug. 17, 2009).

Defendants provide Littlejohn's grievance record here. (*See* ECF 170-6). Littlejohn filed four grievances that could relate to his unsafe-building-conditions claims.[4]

In Grievance #178298632 (submitted May 12, 2022), Littlejohn wrote: "It's hot and congested in this building" and "It's hot and congested, the air is off there is no circulation in the building as it is, my sinus is acting up now . . . . The air shouldn't be off no way do to covid and the poor circulation . . . ." (ECF No. 170-6, PageID.1126 (cleaned up; omissions in original)).  Within a week, a work order was completed, and Littlejohn did not appeal the resolution of his grievance. *Id.*

In Grievance #184387402 (submitted June 15, 2022), Littlejohn wrote: "I been having headaches, congestion, sneezing and blowing black particles out my nose" and "I need to be checked out." (ECF No. 170-6, PageID.1117 (cleaned up)). The record indicates that Littlejohn saw a medical nurse on July 10, 2022, and he did not appeal the resolution of his grievance. *Id.*

---

[4] In addition to his grievances, Littlejohn filed a number of "requests."  The filing of a "request" or "kite" does not initiate the jail's formal administrative process; only the filing of a "grievance" does that. (*See generally* ECF No. 170-5).

Similarly, in Grievance #187384822 (submitted July 2, 2022), Littlejohn wrote: "I been congested, sneezing, having headaches, and blowing out black particles, I was [on Claritin] for a week then taken off." (ECF No. 170-6, PageID.1116 (cleaned up)).  A medical appointment was scheduled, and Littlejohn did not appeal the resolution of his grievance. *Id.*

Lastly, in Grievance #209829572 (submitted October 26, 2022), Littlejohn wrote: "Excessively to hot" and "Excessively to hot, nose stuffy causing breathing problems and the [air conditioning] needs to be turned on to kill germs." (ECF No. 170-6, PageID.1084 (cleaned up)).  The jail generated a work order, which was completed, and Littlejohn did not appeal the resolution of his grievance. *Id.*[5]

All four grievances suffer from the same flaw: Littlejohn did not appeal their resolutions before he sued.[6]  He therefore did not exhaust the jail's internal

---

[5] The jail's response to this grievance was tardy. (*See* ECF No. 170-6, PageID.1084). Nonetheless, Littlejohn was required by jail policy to "file an additional grievance stating that [he] had filed a grievance and ha[s] not received a response." (ECF 170-5, PageID.1055).  He did not.

[6] Defendants also note that the June 15, 2022 grievance was still pending when Littlejohn filed his lawsuit on June 22, 2022, and the latter two grievances were filed only after the case began.  A claim must be exhausted before the prisoner brings it. *Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999) ("The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit.").  And amending the complaint does not allow late exhaustion of claims already in the original complaint. *Beal v. Washington*, No. 21-522, 2022 WL 17094179, at *4 n. 3 (W.D. Mich. Oct. 18, 2022), *report and recommendation adopted*, 2022 WL 17093505 (W.D. Mich. Nov. 20, 2022); *cf. Mattox v. Edelman*, 851 F.3d 583 (6th Cir. 2017) (adopting a different rule for truly "new" claims).

procedures for his unsafe-building-conditions claims before initiating this case. *Pegross*, 2009 WL 2567864 at *2 (granting summary judgment for the defendant because the plaintiff failed to appeal his grievance); *Carr v. Lavender*, No. 10-00673, 2011 WL 4467670, at *3 (S.D. Ohio Sept. 26, 2011), *report and recommendation adopted*, 2011 WL 5834967 (S.D. Ohio Nov. 21, 2011) (same).

Moreover, Littlejohn, rather than countering Defendants' specific position that he never *appealed* any of the grievances while in jail, merely argues that he met the exhaustion requirement because he filed grievances clearly complaining of unconstitutional conditions and his grievances were denied "at all levels of the administrative process." (*See* ECF No. 172, PageID.1548-50).[7]  But this does not address, let alone overcome, Littlejohn's apparent failure to file an appeal if he felt unsatisfied with any of the responses to his grievances.

In fact, Littlejohn attaches in support a portion of the same grievance records summarized above (*see, e.g.*, ECF No. 172, PageID.1566), records that critically lack any indication that he ever appealed any grievance response, and he does not

---

[7] Littlejohn seemingly also argues that he needed not exhaust administrative remedies for claims filed once he left the jail. (*See* ECF No. 172, PageID.1549 ("litigants who file prison condition claims after release . . . need not satisfy the exhaustion requirements . . .")).  Even accepting such a legal principle generally, however, Littlejohn filed this lawsuit on June 22, 2022, before his transfer from the Wayne County Jail in August 2023.  And as noted, a claim must be exhausted before the prisoner brings it, and amending the complaint does not allow late exhaustion of claims already in the original complaint. *See supra* footnote 6.  The Court therefore disagrees to the extent Littlejohn argues exhaustion dos not apply here.

argue that the records are incomplete or inaccurate. He also tellingly claims "that the PLRA's administrative exhaustion requirement is irrelevant and moot" because "constitutional violations do exist" "in this case[.]" (ECF No. 175, PageID.1584-85).

Under these circumstances, particularly where Littlejohn himself seemingly recognizes that he did not meet the technical requirements of exhaustion specifically applicable here, the Court concludes that further discovery will not alter the fatal flaw identified with respect to this issue. In sum, Littlejohn failed to exhaust administrative remedies, and this failure warrants summary judgment for Defendants on Littlejohn's claims related to allegedly unsafe conditions at the jail.

**B.      In-Person Visitation**

Concerning the claimed unconstitutional lack of in-person visitation, Defendants move (1) to dismiss for lack of standing under Fed. R. Civ. P. 12(b)(1), and (2) either to dismiss under Rule 12(b)(6) or for summary judgment based on qualified immunity. (ECF No. 170, PageID.1013). The Court will address each argument in turn and dismiss Littlejohn's claims regarding in-person visitation under Rule 12(b)(6) based on qualified immunity.

*1.      Standing*

When ruling on a Rule 12(b)(1) motion, "the court must take the material allegations of the [complaint] as true and construed in the light most favorable to the

nonmoving party." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  The Constitution requires that the federal courts decide only "cases" and "controversies." U.S. Const. art. III, § 2.  Accordingly, courts can decide only "actual, ongoing" disputes between parties. *Kentucky v. United States ex rel. Hagel*, 759 F.3d 588, 595 (6th Cir. 2014).  One component of ensuring courts do not exceed their jurisdiction is "standing."

If the plaintiff lacks standing, the case is not justiciable and cannot be heard in federal court. *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  Standing requires that the plaintiff "must have suffered an injury-in-fact that is fairly traceable to the defendant's conduct and would likely be redressed by a favorable decision from a court." *Bouye v. Bruce*, 61 F.4th 485, 489 (6th Cir. 2023).  Importantly, to ascertain standing, the Court assumes that the plaintiff's cause of action will be meritorious. *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 298 (2022).

Here, Defendants challenge whether Littlejohn suffered an "injury in fact." (ECF No. 170, PageID.1013).  To support his claim for monetary damages, Littlejohn must have actually incurred an injury stemming from the visitation policy. *See Bowman v. Wayne Cnty. Sheriff*, No. 24-10188, 2024 WL 4984439, at *4 (E.D. Mich. Aug. 20, 2024), *report and recommendation adopted*, 2024 WL 4678869 (E.D. Mich. Nov. 5, 2024).  Littlejohn alleges that the visitation policy violated his rights to intimate association—i.e., he could not see his family or others for nearly

11

three years. (ECF No. 154, PageID.902).  He also alleges a pocketbook harm, stating that he had to pay for virtual visits. *Id.* at PageID.906.  It is reasonable to infer that if Littlejohn had access to free, in-person visits—visits he allegedly was constitutionally entitled to—the expense of visiting with his family would have been less. *Id.* at PageID.909 (detailing the cost charged for video visits and stating that "[i]f a person don't have funds, they just won't be able to associate with family and friends").  Given these facts, Littlejohn met the injury-in-fact requirement here.

Defendants rely on *Bowman* to advance their standing argument, but this case is inapposite.  There, the district court found a lack of injury because the plaintiff merely alleged the existence of the same lack-of-visitation policy without alleging any harm flowing therefrom. *Bowman*, 2024 WL 4678869 at *1 (noting that the plaintiff "did not, for example, allege that specific individuals had plans to visit him, but were stymied by the visitation policy").  Here, Littlejohn's references to a lack of ability to see his "family and friends" (ECF No. 154, PageID.909), and the fact that he was "denied" visitation, *id.* at PageID.906, suggest that specific individuals would have visited him but for the jail's policy.  Littlejohn's claims for lack of in-person visitation are therefore justiciable.

### 2.    *Qualified Immunity*

As stated, Defendants also argue for either dismissal or summary judgment with respect to the visitation claims based on qualified immunity.  Because the Court

12

concludes that Littlejohn fails to state a claim based purely on the complaint, the Court does not consider Defendants' additional materials and addresses the motion under Rule 12(b)(6) only. *See* Fed. R. Civ. P. 12(d).[8]

A district court may grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if the complaint fails to allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  The Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual assertions, and draws every reasonable inference in the nonmoving party's favor. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  But the Court will not presume the truth of legal conclusions in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true or not," it must be dismissed. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).  For a Rule 12(b)(6) motion, courts can only "consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as

---

[8] Defendants provide Littlejohn's virtual visitation records. (ECF No. 170-9, PageID.1305-22).  Because the Court can grant dismissal under Rule 12(b)(6) based solely on the complaint, the Court need not, and does not, consider the records.

they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430 (citation omitted).

Defendants argue that, taking Littlejohn's well-pleaded allegations as true, he fails to establish a violation of clearly established law. (*See* ECF No. 170, PageID.1014-16).   Because the right to in-person visitation was not clearly established at the time of the alleged events, the Court will grant the motion to dismiss based on qualified immunity.

After a defending official initially raises qualified immunity, the plaintiff bears the burden of showing that the official is not entitled to qualified immunity. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013).   Qualified immunity applies when "conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231 (2009)).   "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id*. (quotation marks and citation omitted).   Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd,* 563 U.S. 731, 741 (2011).

In sum, whether government actors are entitled to qualified immunity requires the Court to determine that both (1) a violation of a constitutional right occurred, and

(2) the right was clearly established at the time of the violation. *Baynes v. Cleland*, 799 F.3d 600, 609-10 (6th Cir. 2015).  And the Court may address these prongs in either order. *Pearson*, 555 U.S. at 236.  If the answer to either question is "no," the officials are entitled to qualified immunity.

Here, Littlejohn fails to show that the right to *any* form of visitation in jail has been "clearly established."  Indeed, doing so would be difficult because "prison inmates have no constitutional right to visitation." *Cook v. Campbell*, 173 F.3d 854 (6th Cir. 1999) (unpublished table opinion); *see also Bazzetta v. McGinnis,* 124 F.3d 774, 779 (6th Cir. 1997), *supplemented,* 133 F.3d 382 (6th Cir. 1998); *Schweder ex rel. P.S. v. Beshear*, 570 F. Supp. 3d 443, 453 (E.D. Ky. 2021); *Ogbeiwi v. CoreCivic Am.*, No. 20-01094, 2021 WL 2144326, at \*5 (W.D. Tenn. May 26, 2021) ("Moreover, inmates do not generally have a clearly established constitutional right to receive visits."); *Vaughn v. Daviess Cnty. Det. Ctr.*, No. 16-P61, 2016 WL 5843935, at \*7 (W.D. Ky. Oct. 4, 2016); *Desper v. Clarke*, 1 F.4th 236, 243-44 (4th Cir. 2021) ("Although the Supreme Court has considered issues concerning the visitation rights of prisoners in several cases, no case from that Court or our court clearly establishes a constitutional right to visitation in prison grounded in the First or Fourteenth Amendments.") (cleaned up).  And though most cases have arisen in the contest of prisons, Littlejohn identifies no contrary case law that clearly announced a different principle for jails.

15

Moreover, Littlejohn identifies no case law suggesting that the rights to association or speech cannot be adequately protected with virtual visits.  It was therefore not clearly established that the jail's visitation policy violated the Constitution.  Accordingly, the Court will dismiss Littlejohn's lack-of-visitation claims based on qualified immunity.

As a final note, the Court acknowledges that although a qualified immunity defense should be resolved at the earliest stage possible in litigation, the Sixth Circuit generally prefers such decisions be made after discovery, on a motion for summary judgment. *Hodges v. City of Grand Rapids*, 139 F.4th 495, 504-05 (6th Cir. 2025); *Sterling Hotels, LLC v. McKay*, 71 F.4th 463, 466 (6th Cir. 2023); *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020).

"Qualified immunity is, however, resolvable at the motion-to-dismiss stage when the *complaint* establishes the defense." *Hodges*, 139 F.4th at 505 (quotation marks and citation omitted; emphasis in original); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery") (cleaned up); *Sterling Hotels*, 71 F.4th at 466 ("when a defendant moves to dismiss on qualified-immunity grounds, district courts cannot avoid ruling on the issue") (quotation marks and citation omitted).

16

"At the pleadings stage, . . . the court takes the complaint's factual allegations as true and decides whether—based on those facts—the defendant is entitled to qualified immunity." *Sterling Hotels*, 71 F.4th at 467; *see also Marvaso*, 971 F.3d at 605 ("[T]o overcome a defendant's qualified immunity defense at the motion to dismiss stage, a plaintiff must plausibly allege facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. This is a low bar, given that granting qualified immunity at the motion to dismiss stage is usually disfavored.") (quotation marks and citations omitted).

Here, even accepting as true Littlejohn's allegations that he was deprived in-person visitation, this does not amount to the violation of any clearly established right.

## C.    Lack of Recreation or Exercise

Littlejohn alleges that Defendants violated his constitutional rights under the Fourteenth Amendment by refusing him any recreation outside of his cell during his stay in the jail between September 2020 and August 2023.  The Court construes these claims as including deprivation of the right to exercise. (*See* ECF No. 154, PageID.897 (alleging that the jail "suspended outside/inside recreation which is the only . . . chance [for detainees] to stay healthy and in shape").  Defendants ask the Court to consider specific evidence under this issue, including logs that show

17

Littlejohn recreated outdoors twice and indoors once—*see* ECF No. 170-11, PageID.1539 (showing one hour of outside recreation on July 6, 2022); *id.* at PageID.1541 (showing one hour and fifteen minutes of inside recreation time on October 26, 2022); *id.* at PageID.1540 (showing forty-five minutes of outside recreation on April 12, 2023)—and an affidavit from Defendant Allen averring that the lack of recreation was due to financial and staffing constraints, ECF 170-10, PageID.1536-1537.

The Court, however, concludes that summary judgment on the lack-of-recreation claims would be premature.  Unlike with the PLRA-exhaustion issue where Littlejohn's failure to appeal any grievance is essentially undisputed and renders discovery unnecessary, discovery here could alter the outcome. Specifically, key factual disputes exist regarding (1) whether and to what extent Littlejohn recreated during his time at the jail and (2) Defendants' purported justifications for limiting inmates' recreation time.[9]  The Court therefore declines to consider Defendants' evidence on this issue until Littlejohn has the opportunity for discovery. And taking the operative allegations from the complaint as true, the Court accepts for now that Littlejohn did not have the chance to recreate outside of his cell even once during his nearly three-year stay in the jail.

---

[9] Considering this latter point in particular, *see infra* footnote 11.

Turning to the Rule 12(b)(6) portion of Defendants' motion, they essentially raise one argument for dismissal of the recreation claims applicable to all Defendants: qualified immunity. (ECF No. 170, PageID.1017). Defendants also raise defendant-specific defenses related to their level of involvement in the alleged violations. *Id.* at PageID.1021-23. The Court will address Defendants' arguments in turn.

### 1.    *Qualified Immunity*

Defendants first argue that they are entitled to qualified immunity on Littlejohn's lack-of-recreation claims. So, the Court must again address (1) whether a violation of a constitutional right occurred and (2) whether that right was clearly established at the time of the violation. *Baynes*, 799 F.3d at 609-10.

"[U]nder the Due Process Clause [of the Fourteenth Amendment], a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Thus, when a court is evaluating the constitutionality of conditions of pretrial confinement that implicate detainees' right not to be deprived of liberty without due process, "the proper inquiry is whether those conditions amount to *punishment* of the detainee." *Id.* (emphasis added). But "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to

19

'punishment,'" *Id.* at 539.  So, the Court must first address whether Defendants had a sufficient penological purpose for the deprivation.

The allegations in the complaint do not identify Defendants' rationale for the denial of exercise or recreation time.[10]  But in their briefing, Defendants identified "an acute shortage of sufficient security staff to monitor inmate recreation" because of a lack of funding. (ECF No. 170, PageID.1019-20, 1022).  It is generally understood, however, that lack of resources is rarely an adequate justification for the deprivation of constitutional rights if the Defendant was positioned to address or ameliorate the lack of resources. *See Watson v. City of Memphis*, 373 U.S. 526, 537 (1963) ("[I]t is obvious that vindication of conceded constitutional rights cannot be made dependent upon any theory that it is less expensive to deny than to afford them."); *Moore v. Morgan*, 922 F.2d 1553, 1557 n.4 (11th Cir. 1991) ("[L]ack of funds for facilities does not justify the maintenance of unconstitutional jail conditions."); *Battle v. Anderson*, 564 F.2d 388, 396 (10th Cir. 1977) ("If the State of Oklahoma wishes to hold the inmates in institutions, it must provide the funds to

---

[10] The Court may infer from the complaint that, in some way, COVID-19 provided a rationale, although Defendants did not develop that argument in their motion. (*See* ECF No. 154, PageID.897).  But taking the allegations as true, Littlejohn was denied recreation long after COVID-19-related restrictions had been relaxed, and the pandemic settled. *Id.* at PageID.899 (alleging that the MDOC had relaxed COVID-19 prevention measures about a year before he left the jail's custody).  The Court cannot conclude in this posture that the lack of exercise was reasonably related to legitimate government interest for the balance of Littlejohn's nearly three-year stay.

maintain the inmates in a constitutionally permissible manner."); *cf. Birrell v. Brown*, 867 F.2d 956, 959–60 (6th Cir. 1989) (requiring summary judgment where the unconstitutional conduct occurred due to lack of resources but defendant had no power to affect the resources available to him).[11]  Therefore, based on the record at the pleadings stage, the Court concludes that the jail lacked a legitimate penological purpose or governmental interest in limiting recreation.

Case law suggests the Court must still determine when deprivation of out-of-cell exercise, *even without penological or legitimate governmental justification*, is unconstitutional. *See, e.g., Allen v. Holt*, No. 3:18-cv-00033, 2019 WL 4167278, at *3 (M.D. Tenn. Sept. 3, 2019).

Many cases that address this question sound in the Eighth Amendment.  But the Due Process Clause provides "at least" the same protections to pretrial detainees that the Eighth Amendment does to convicted inmates. *Bell*, 441 U.S. at 545. Unsurprisingly then, the Sixth Circuit has historically analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims "under the same rubric." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir.

---

[11] Even if the Court credited lack of funds or staff due to COVID-19 as a valid penological reason to limit exercise, fact development is necessary to assess whether it was sufficient to support the jails recreation policy. *See generally Turner v. Safley*, 482 U.S. 78, 89-90 (1987) (requiring the Court to consider, *inter alia*, factors like the prisoners' alternative means of exercising their rights), superseded by statute on other grounds as stated in *Jolly v. Coughlin*, 76 F.3d 468, 475, 475 n. 3 (2nd Cir. 1996).

2013); *but cf. Brawner v. Scott County*, 14 F.4th 585, 596 (6th Cir. 2021) (unsettling the convergence of the Eighth and Fourteenth Amendment standards only regarding the subjective component of a deliberate indifference case).  The Court will therefore consider cases arising under both the Eighth and Fourteenth Amendments.

In *Allen*, the court synthesized the relevant persuasive authority on the question of when deprivation of out-of-cell exercise, *without penological justification*, works a violation of the Fourteenth Amendment:

> This court gleans from the cited cases that the opportunity for some amount of "regular" exercise is required, that being deprived of the opportunity to exercise for forty-six days in a row may not meet that requirement, but that daily exercise is not constitutionally mandated. Being required to exercise in "full restraints," depending on the other circumstances, may or may not constitute a constitutional violation.

*Allen*, 2019 WL 4167278 at *3 (collecting cases).

And when determining whether the deprivation is unconstitutional, the Court must consider factors "such as the size of the cell, opportunity for contact with other inmates, time per day expended outside the cell, justifications for denial of the right to exercise, physical or psychological injuries resulting from a lack of exercise or a particularized need for exercise." *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983).

Here, the only relevant fact from the complaint is that Plaintiff was given no time to exercise out of his cell over a nearly-three-year span. (ECF No. 154, PageID.897-98).  In *Patterson*, the Sixth Circuit denied summary judgment for the

22

defendants because there was a fact dispute regarding whether the plaintiff had been able to exercise outside of his cell even once in a forty-six-day stay in prison. *Patterson*, 717 F.2d at 289.   The court of appeals announced that "near-total deprivation of exercise or recreational opportunity, without penological justification, violates" the Constitution. *Id.*  In *Allen*, the plaintiff declared that he was given no real opportunity for indoor or outdoor exercise over a five-month span.  The district court applied *Patterson* and denied summary judgment for the defendant. *Allen*, 2019 WL 4167278 at *1.  And in *Northington v. Sherrard*, 955 F.2d 45 (6th Cir. 1992) (unpublished table decision), the Sixth Circuit concluded that allegations that a pretrial detainee received "only one half-hour period of exercise" in a "three-and-a-half month period" were "sufficient to state a cause of action" under the Constitution.

Littlejohn alleges here, in effect, that he suffered a near-total deprivation of exercise of recreational opportunity for three years, and the Court already explained *ante* that it lacks sufficient information in this posture to credit Defendants' proffered penological justification. Littlejohn's allegations, in the absence of a more-developed argument on an acceptable penological justification, are sufficient to state the existence of a constitutional violation.[12]

---

[12] Even if the Court considered Defendants' evidence that Littlejohn recreated three times while at the jail, it is not clear such limited recreation over a nearly three-year

Having concluded that Littlejohn pleaded a constitutional violation, the Court must determine whether the right at issue was clearly established. *See Baynes*, 799 F.3d at 609-10.  It was.

At the outset, Defendants maintain that case law regarding the Eighth Amendment and long-term facilities cannot clearly establish the scope of the Fourteenth Amendment right in jails at issue here. (*See* ECF No. 170, PageID.1018). That is incorrect because "pretrial detainees are entitled to the same Eighth Amendment rights as other inmates." *Ruiz-Bueno v. Scott*, 639 F. App'x 354, 358 (6th Cir. 2016) (unpublished; quotation marks and quotation omitted).  Accordingly, "precedents governing prisoners' Eighth Amendment rights also govern the Fourteenth Amendment rights of pretrial detainees." *Id.*  After all, the Supreme Court has noted that the Fourteenth Amendment is "at least" as protective as the Eighth Amendment. *Bell*, 441 U.S. at 545.  So although Littlejohn was a pre-trial detainee while at the Wayne County Jail, his rights under the Fourteenth Amendment were at least coterminous with prisoners' rights under the Eighth Amendment. *See Northington*, 955 F.2d 45.

The rule statement from *Patterson*—"It is generally recognized that a total or near-total deprivation of exercise or recreational opportunity, without penological

---

span would survive constitutional scrutiny under the applicable authority summarized *supra*.

justification, violates Eighth Amendment guarantees," 717 F.2d at 289—combined with the well-established principle that the Fourteenth Amendment is at least as protective as the Eighth, clearly establishes the scope of the right invoked here. It should be obvious to officers that pretrial detainees are entitled to at least *some* out-of-cell exercise. *See Northington*, 955 F.2d 45.

Next, Defendants rely on *Rodgers v. Jabe*, 43 F.3d 1082 (6th Cir. 1995), and *Wilson v. Bouchard*, No. 21-12066, 2022 WL 14812654 (E.D. Mich. Sept. 27, 2022), *report and recommendation adopted*, 2022 WL 14789150 (E.D. Mich. Oct. 25, 2022). Neither undermines the Court's conclusion.

First, in *Rodgers*, the Sixth Circuit held in relevant part only that it was not clearly established that deprivation of out-of-cell exercise for punitive purposes violated the constitution. *Rodgers*, 43 F.3d at 1088 ("We conclude that . . . a reasonable prison official would not have known that it was unconstitutional to limit a prisoner's exercise to one hour per week, five days a week every thirty days *as a means of punitive sanction*.") (emphasis added). Here, however, at the pleadings stage, Defendants developed no valid penological purpose reasonably related to depriving inmates of *all* recreation opportunity, and they did not argue that the curtailment of Littlejohn's access to exercise was intended as a punitive sanction. *Rodgers* is of limited value.

Second, the allegations in *Wilson* were insufficient to survive summary judgment because the plaintiff alleged only that he was denied "daily" recreation, but "daily recreation time is not constitutionally mandated." *Wilson*, 2022 WL 14812654 at \*5.  Unlike *Wilson*, the present case has more than "scant facts . . . [that] make it difficult to determine the precise amount of recreation time that [the plaintiff] was permitted." *Id.*  Here, taking the allegations as true, it is clear how much recreation time Littlejohn had—none.  *Wilson* is inapposite.

In short, Littlejohn was denied all recreation without a sufficiently developed penological justification. Since *Patterson*, it has been "generally recognized" that doing so violates the Constitution. *Patterson*, 717 F.2d at 289.[13]  Qualified immunity is therefore unwarranted on the pleadings.

---

[13] Although authority from other circuits may not always clearly establish the law, there is a healthy consensus that some access to exercise is required. *See Pierce v. County of Orange*, 526 F.3d 1190, 1212 (9th Cir. 2008) ("Although we need not hold that there is a specific minimum amount of weekly exercise that must be afforded to detainees who spend the bulk of their time inside their cells, we hold that providing the equivalent of slightly less than thirteen minutes of exercise a day does not give meaningful protection to this basic human necessity."); *Davenport v. DeRobertis*, 844 F.2d 1310, 1315 (7th Cir. 1988) (collecting cases regarding both convicted inmates and pretrial detainees that suggested allowing fewer than five hours for out-of-cell exercise is constitutionally problematic); *Campbell v. Cauthron*, 623 F.2d 503, 507 (8th Cir. 1980) (concluding that the Fourteenth Amendment required one hour out of the cell per day); *cf. Housley v. Dodson*, 41 F.3d 597, 599 (10th Cir. 1994) (requiring exercise in a jail), overruled in part on other grounds by *Tucker v. Graves*, No. 96-3015, 1997 U.S. App. LEXIS 3996 (10th Cir. Mar. 6, 1997) (unpublished); *Lewis v. Smith*, No. 00-31371, 2001 WL 1485821, at \*1 (5th Cir. 2001) (unpublished; noting that jail inmates must have some access to out-of-cell exercise).

### *2.     Individual Involvement*

As noted, Littlejohn sued three individuals at issue here: Raphael Washington (the Wayne County Sheriff), Robert Dunlap (the Wayne County Chief of Jails), and Fredryn Allen (the Wayne County Jail Commander).   Up to this point, all the allegations and legal arguments applied equally to all three Defendants.  Here, they diverge.

Under § 1983, an officer is liable only for his own conduct; thus, § 1983 does not support *respondeat superior* liability. *Iqbal*, 556 U.S. at 676.  But it is well-settled that a policymaking official can be held liable, along with any entity for which that official makes policy, for constitutional violations which result from the adoption of an unconstitutional procedure. *See, e.g., A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Detention Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004); *see also Estate of Young v. Martin*, 70 F. App'x 256, 260 n. 3 (6th Cir. June 26, 2003) (unpublished; prison officials can be held individually liable "for their failures in their own obligations with regard to developing and implementing policy and custom in such a way that resulted in violations of their Eighth Amendment rights"); *Barker v. Goodrich*, No. 07-946, 2011 WL 6258303, at *2 (S.D. Ohio Dec. 15, 2011). Defendants argue that Littlejohn alleged insufficient personal involvement by each of them to state a claim under § 1983.

27

The Court concludes that Littlejohn alleges insufficient personal involvement by Sheriff Washington to state a claim under § 1983. The sum total of Littlejohn's allegations against Sheriff Washington are that he: "is the sheriff of the Wayne County Sheriff Department and Wayne County Jail. He was at all times the ultimate decisionmaker. Because he was/is personally involved in Plaintiff's claims." (ECF No. 154, PageID.895).

The Court will first disregard Plaintiff's claim that Sheriff Washington "was/is personally involved in Plaintiff's claims" because it is a quintessential legal conclusion inadequate under *Twombly*. 550 U.S. at 555. Next, Littlejohn fails to allege that Washington did or did not do anything that personally created the lack of exercise. He does not allege that Washington was responsible for developing jail policy, did so, knew of the policy in place, or had a responsibility to find out. Instead, Littlejohn seeks liability solely based on Washington's role as sheriff with final decision-making authority. But ultimate authority cannot be sufficient to establish personal involvement, or else § 1983 would support *respondeat superior* liability, which it does not. The Court will therefore dismiss the lack-of-exercise claim against Sheriff Washington.

In contrast, Littlejohn at this juncture alleges sufficient personal involvement by Chief Dunlap and Commander Allen to state a claim under § 1983. Littlejohn alleges that Dunlap and Allen were "co-decision maker[s] with Authority to institute,

28

enforce and make jail policies." (ECF No. 154, PageID.895-96). And Littlejohn specifically alleges that both failed to institute policies that they "should have" or were required to in order to sufficiently protect detainees' rights. *Id.* What's more, Littlejohn alleges that the jail "suspended" recreation. *Id.* at PageID.897. A reasonable inference is that this suspension constituted a policy, made by either or both Dunlap and/or Allen. (*See* ECF No. 170, PageID.1020 (conceding that someone made the decision to "reassign[]" jail officers who otherwise would have supervised recreation)). Littlejohn appropriately seeks recompense for the officers' "failures in their own obligations with regard to developing and implementing policy and custom in such a way that resulted in violations of" his constitutional rights. *Martin*, 70 F. App'x at 260 n. 3. As such, Littlejohn's allegations suffice to establish that both Dunlap and Allen were sufficiently involved in (not) developing a constitutionally adequate policy for Littlejohn, a *pro se* prisoner, to state a claim under § 1983.[14] *See Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (noting the requirement that courts construe *pro se* complaints "liberally").

## III.   Conclusion

---

[14] Relying on evidence outside of the complaint, Defendants Allen and Dunlap argue that they could not be held responsible for deprivations that flowed from a lack of resources. (ECF No. 170, PageID.1022); *cf. Birrell*, 867 F.2d at 959-60. At this juncture, the Court will rely only on the allegations in the complaint and reasonable inferences that flow therefrom—that the senior officers in charge of jail policy might have some personal ability to affect resource allocation or hiring. Defendants are free to raise *Birrell* in a post-discovery motion.

For the reasons stated above, the Court will: (1) grant summary judgment for all Defendants on Littlejohn's conditions-of-confinement claims because he failed to exhaust administrative remedies as required by the PLRA; (2) grant dismissal under Rule 12(b)(6) on all Littlejohn's visitation claims because he fails to allege the violation of a clearly established right; and (3) deny summary judgment as premature for Littlejohn's lack-of-exercise claims but grant dismissal with respect to Defendant Washington only based on his lack of personal involvement. Accordingly, the only remaining claims in the case not currently subject to dismissal or summary judgment are Littlejohn's lack-of-exercise claims against Defendants Dunlap and Allen.

* * *

For the reasons given, the Court ORDERS that Defendants' motion to dismiss and for summary judgment (ECF No. 170) is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that all Littlejohn's claims except the lack-of-exercise claims against Defendants Dunlap and Allen are DISMISSED WITH PREJUDICE.

Dated: February 27, 2026                    s/Robert J. White
                                            Robert J. White
                                            United States District Judge

30